UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DAMIKO MILES, | CASE NO.:   5:11CV864 |
| Plaintiff, | |
| | MAGISTRATE JUDGE |
| | GEORGE J. LIMBERT |
| v. | |
| | |
| COMMISSIONER OF SOCIAL SECURITY, | **MEMORANDUM OPINION & ORDER** |
| Defendant. | |

Plaintiff requests judicial review of the final decision of the Commissioner of Social Security denying Damiko Miles Disability Insurance Benefits (DIB) and Supplemental Security Income Benefits (SSI).  The Plaintiff asserts that the Administrative Law Judge (ALJ) erred in her April 9, 2012 decision in finding that Plaintiff was not disabled because she could perform her past relevant work (Tr. 13-22).  The Court finds that substantial evidence supports the ALJ's decision for the following reasons:

I.     PROCEDURAL HISTORY

Plaintiff, Damiko Miles filed her application for DIB and SSI on January 28, 2008, alleging she became disabled on July 1, 1987, but later amended her onset date to January 1, 2008 (Tr. 123-124).   Plaintiff's application was denied initially and on reconsideration (Tr. 164-170, 172-177). Plaintiff requested a hearing before an ALJ, and on March 2, 2012, a hearing was held where Plaintiff appeared with counsel and testified before an ALJ (Tr. 294-367).     Ted Massey, a vocational expert also testified.  (Tr. 121-165).

On April 9, 2010, the ALJ issued her decision, finding Plaintiff not to be disabled (Tr. 11-22).  Plaintiff requested a review before the Appeals Council, and the Appeals Council denied Plaintiff's request for review (Tr. 1- 4).  Therefore, Plaintiff has requested judicial review of the Commissioner's final decision pursuant to 42 U.S.C. Section 405(g) and 42 U.S.C. 1383(c).

## II.   STATEMENTS OF FACTS

Plaintiff, who was 43 years old on the date of the ALJ's decision, is a "younger person" under the regulations (Tr. 127). Plaintiff has a high school education in addition to six months of training at the American School of Technology to become a medical office assistant, but did not graduate (Tr. 127). She also has past relevant work experience as a dietary aid/dishwasher (Tr. 129).

## III.  SUMMARY OF MEDICAL EVIDENCE

Plaintiff is only contesting the ALJ's findings with regard to her physical impairments, particularly her alleged carpal tunnel syndrome and degenerative disc disease.

On December 20, 2006, Plaintiff went to the emergency room after falling on her knees while trying to catch the bus (Tr. 440). X-rays of plaintiff's knees showed no fracture or dislocation and mild tricompartmental osteoarthritis (Tr. 444-45). Plaintiff was discharged with crutches, Ace Bandages, and prescriptions for Naprosyn and Vicodin (Tr. 441).

On January 4, 2007, Plaintiff was examined by Kurt Stemple, M.D., an orthopedist (Tr. 412). On physical examination of Plaintiff's knees, Dr. Stemple noted no swelling or effusion, good range of motion and stability, and diffuse anterior tenderness and crepitus (Tr. 412). Dr. Stemple examined Plaintiff's x-rays, noting evidence of degenerative joint disease with osteophytic spurring (Tr. 412). He administered cortisone injections to Plaintiff's knees for short term pain control, and recommended that Plaintiff lose weight (Tr. 413).

On April 1, 2007, Plaintiff went to the emergency room with complaints of a flare-up of her knee and low back pain (Tr. 438). Plaintiff was diagnosed with polyarthralgia and discharged with a prescription for Vicodin (Tr. 438-39).

X-rays of Plaintiff's lumbosacral spine, on November 28, 2007, showed mild degenerative changes (Tr. 443).

Plaintiff sought no additional treatment for knee pain until January 2009, when she sought treatment from Vimal B. Patel, M.D., her family doctor (Tr. 406). A physical examination of Plaintiff's knees was normal except for some slight crepitus (Tr. 406). Dr. Patel diagnosed morbid obesity and bilateral knee pain, prescribed Ultram, and educated Plaintiff with regard to diet and

exercise (Tr. 406).

On March 16, 2009, Plaintiff sought treatment from Dr. Patel for carpal tunnel pain (Tr. 426). Dr. Patel reported that Plaintiff had positive Tinel's and Phalen's tests of the right wrist with numbness over the median nerve distribution (Tr. 426) He diagnosed carpal tunnel syndrome, advised Plaintiff to take an NSAID for five days, gave her a wrist splint to use at night, and educated her to cut down on repetitive motions and do hand stretching exercises (Tr. 426). On March 26, 2009, Plaintiff continued to complain of carpal tunnel pain, and Dr. Patel advised her to avoid repetitive motions with her wrists and gave her a prescription for a cock-up night-time wrist splint (Tr. 425).

On April 8, 2009, Plaintiff went to the emergency room with complaints of numbness and tingling in her right hand and back pain (Tr. 455). Plaintiff was diagnosed with carpal tunnel syndrome and released (Tr. 458).

On May 26, 2009, Plaintiff went to the emergency room complaining of chronic back pain (Tr. 556). On physical examination Plaintiff had no tenderness of the cervical, thoracic, or lumbar spine (Tr. 556). Plaintiff's extremities had full range of motion, a straight leg raising test was negative, and she was able to ambulate without difficulty (Tr. 556). Plaintiff was diagnosed with chronic back pain and discharged with a prescription for Motrin 800 mg. (Tr. 556).

On June 23, 2009, Plaintiff sought treatment from Dr. Patel for complaints of chronic back pain and bilateral knee pain (Tr. 507). Dr. Patel advised Plaintiff that she needed to modify her diet and start exercising more (Tr. 507). Dr. Patel noted that x-rays of Plaintiff's back showed only mild degenerative disc disease (Tr. 409, 507). On physical examination, Plaintiff's knees had slight crepitus and no joint laxity, and a straight leg raising test was negative (Tr. 507). Plaintiff had some point tenderness over the lower lumbar region (Tr. 507). Dr. Patel advised Plaintiff to keep a food diary and take Motrin a couple of times per week (Tr. 507).

On September 3, 2009, Plaintiff saw Dr. Patel with complaints of back pain and bilateral knee pain (Tr. 599). A musculoskeletal examination was negative for any scoliosis or kyphosis and Plaintiff's spinal ranges of motion were intact with positive point tenderness in the lumbar region (Tr. 599). A straight leg raising test was negative and Plaintiff's strength was fully intact in her

upper and lower extremities (Tr. 599). Plaintiff's knees were positive for crepitus, but had intact range motion and were negative for any swelling or tenderness (Tr. 599).

On August 11, 2009, Plaintiff went to the emergency room with complaints of pain in her right knee, right hip, and low back (Tr. 646). Plaintiff was diagnosed with back, hip, and knee pain and released with prescriptions for an anti-inflammatory medication and Vicodin (Tr. 646).

On September 13, 2009, Seyed Shahmedi, M.D., completed a Medical Source Statement (Tr. 518). Dr. Shahmedi opined that Plaintiff could lift and carry fifteen pounds occasionally, and ten pounds frequently; stand and walk for two hours in an eight-hour day, and thirty minutes without interruption; occasionally balance, reach, handle, and feel; and never climb, stoop, crouch, kneel, crawl, push, pull, or perform fine manipulations (Tr. 518-19). Dr. Shahmedi reported that Plaintiff had been prescribed a cane and a breathing machine (Tr. 519). He opined that migraines, leg pain, back pain, numbness and tingling in her legs, and hand cramps, would interfere with Plaintiff's ability to perform full time work (Tr. 519).

## **IV. SUMMARY OF TESTIMONY**

At this hearing of this matter, Plaintiff indicated that she could not work due to her reduced memory, food addiction, pain in her knees and back, broken veins, and numbness and tingling in her legs. The Plaintiff indicated that her abilities to sit, stand and walk were very limited by her experience of increased joint pain and stiffness.

The Plaintiff reported that she remains able to attend to her own personal needs, prepare meals, care for her daughter, perform household tasks such as cleaning, laundry and ironing, use public transportation and sometimes drive, shop and attend meetings of Alcoholic Anonymous, Overeaters Anonymous and attend church regularly. (Tr. 115-159).

Ted S. Magg, a vocational expert reviewed Plaintiff's file and listened to her testimony at the hearing. He testified that a dietary aide/dishwasher is generally an unskilled light exertion occupation and it is sometimes medium and semi-skilled. (Tr. 115-159).

## V. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to DIB and SSI. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step to show that alternate jobs in the economy are available to the claimant, considering her age, education, past work experience and residual functional capacity. *See, Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## VI. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by Section 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. Section 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence

supports the Commissioner's findings and whether the Commissioner applied the correct legal standards. *See*, *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Commissioner of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *See, Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *See, Id.*; *Walters,* 127 F.3d at 532. Substantiality is based upon the record taken as a whole. *See, Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

## VII.     ANALYSIS

Issues:

I.     Whether the ALJ erred when she found that Plaintiff's impairments of carpal tunnel syndrome and lumbar degenerative disk disease were not severe

II.    Whether the ALJ failed to properly evaluate the opinion of Plaintiff's treating physician

The ALJ found that Plaintiff had "severe" degenerative joint disease of the bilateral knees that did not meet or equal the criteria of any of the listed impairments (Tr. 13-15, Findings 3-4). The ALJ also determined that Plaintiff's carpal tunnel syndrome and mild degenerative disc disease were non-severe impairments (Tr. 14-15). The ALJ found that Plaintiff had the physical residual functional capacity (RFC) to perform a full range of light work (Tr. 17, Finding 5). The ALJ found that Plaintiff was not disabled because she could perform her past relevant work as a dietary aide and she actually performed it (Tr. 21, Finding 6).

Substantial evidence supports the ALJ's finding that Plaintiff's carpal tunnel syndrome and degenerative disc disease were non-severe impairments. An impairment or combination of impairments is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities. 20 C.F.R. Sections 404.1521(a), 416.921(a). Basic work activities are defined in the regulations as the abilities or aptitudes necessary to do most jobs. 20 C.F.R.

Sections 404.1521(b), 416.921(b). Examples of these abilities include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling. Id. An impairment or combination of impairments is not severe when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to perform basic work activities. Social Security Ruling (SSR) 85.28.

In this case the ALJ found Plaintiff's carpal tunnel syndrome to be a non-severe impairment because her physicians had never recommended that she undergo definitive diagnostic testing for this condition, such as an EMG study, or that she explore any surgical options such as carpal tunnel decompression surgery (Tr. 14). At most, Dr. Patel gave Plaintiff a wrist splint to use at night and educated her to cut down on repetitive motions and do hand stretching exercises (Tr. 426). In light of the lack of objective medical studies to support Plaintiff's diagnosis of carpal tunnel syndrome and the conservative measures used to treat her complaints, the ALJ correctly concluded that this condition would not significantly limit plaintiff's ability to perform basic work activities and, therefore, was non-severe.

With regard to Plaintiff's degenerative disc disease, the ALJ explained that she determined it to be non-severe because objective medical studies, such as x-rays in November of 2007, supported no more than mild degenerative changes (Tr. 14, 443, 507). In addition,, tenderness to palpation was the only clinical sign of any back impairment noted by Plaintiff's treating physicians (Tr. 15, 507, 599). Plaintiff's physicians consistently reported that straight leg raising tests were negative and she had no difficulty with ambulation (Tr. 507, 556, 599). Based upon the clinical evidence and the lack of evidence that Plaintiff's mild degenerative disc disease caused limitations that would significantly interfere with her ability to perform basic work activities, the ALJ correctly found that this impairment was non-severe (Tr. 15).

The Court finds that substantial evidence supports the ALJ's conclusion that Dr. Shahmedi's opinion was entitled to little weight (Tr. 19). The opinion of a treating physician as to the nature and severity of an impairment is only entitled to controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other

substantial evidence in the case. 20 C.F.R. Sections 404.1527(d), 416.927(d).

In this case, the ALJ explained that she gave little weight to Dr. Shahmedi's Medical Source Statement because Dr. Shahmedi did not cite any clinical or diagnostic findings in support of the physical limitations that he espoused (Tr. 19, 518-19). Since Dr. Shahmedi's opinions of extreme limitations appeared to be based solely on Plaintiff's subjective complaints, the ALJ correctly gave them little weight (Tr. 19). See, 20 C.F.R. Section 416.927(d)(3) (providing that a medical sources's opinions must be based on objective clinical or laboratory findings).

In contrast to Dr. Shahmedi's opinion of extreme physical limitations, the evidence supported the ALJ's conclusion that she was capable of performing light work. Plaintiff has never required more than conservative measures to treat her degenerative joint disease, and she sought only sporadic medical treatment (Tr. 18-19). The clinical signs noted by her treating physicians were limited to crepitus with no swelling, effusion, or decreased range of motion (Tr. 19, 412). Plaintiff's physicians reported that she had no difficulty with ambulation (Tr. 556). Despite her impairments, Plaintiff was able to engage in a range of activities of daily living including preparing meals, caring for her daughter, performing household tasks (cleaning, laundry, ironing), using public transportation, and attending Alcoholics Anonymous, Overeater's Anonymous, and church services on a regular basis (Tr. 21, 274-78). These limited clinical findings and fairly normal activities of daily living supported the ALJ's RFC assessment.

**VIII. CONCLUSION**

Based upon a review of the record and law, the undersigned affirms the ALJ's decision. Substantial evidence supports the finding of the ALJ that Plaintiff has the residual functional capacity (RFC) to perform her past relevant work as a dietary aid/dishwasher, and therefore is not disabled. Hence, she is not entitled to DIB and SSI.

DATE: May 15, 2012                     */s/George J. Limbert*
                                       GEORGE J. LIMBERT
                                       UNITED STATES MAGISTRATE JUDGE